# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

### CIVIL MINUTES - GENERAL

| Case No. | CV 13-07992-RGK (FFMx) | Date | January 17, 2014 |
|---|---|---|---|
| Title | *Salvador Palomera Moreno v. CitiMortgage, Inc et al.* | | |

| Present: The Honorable | R. GARY KLAUSNER, U.S. DISTRICT JUDGE |
|---|---|

| Sharon L. Williams (Not Present) | Not Reported | N/A |
|---|---|---|
| Deputy Clerk | Court Reporter / Recorder | Tape No. |

| Attorneys Present for Plaintiffs: | Attorneys Present for Defendants: |
|---|---|
| Not Present | Not Present |

**Proceedings:**     **(IN CHAMBERS) Order re: Defendant CitiMortgage's Motion to Dismiss First Amended Complaint (DE 16); Defendant Northwest's Motion to Join Motion to Dismiss (DE 21)**

## I.     INTRODUCTION

On October 9, 2013, Plaintiff Salvador Palomera Moreno ("Plaintiff") filed an action against Defendants CitiMortgage, Inc. ("CitiMortgage") and Northwest Trustee Services, Inc. ("Northwest") in Los Angeles Superior Court. The Complaint alleges the following causes of action: (1) violation of California's Homeowner Bill of Rights against CitiMortgage, (2) unfair business practices pursuant to California Business and Professions Code against Defendants, (3) breach of contract against CitiMortgage, (4) fraud against CitiMortgage, (5) negligent misrepresentation against CitiMortgage, and (6) promissory estoppel against CitiMortgage. The Complaint arises out of a loan CitiMortgage made to Plaintiff, secured by Plaintiff's real property. Plaintiff alleges that CitiMortgage reneged on an agreement to modify Plaintiff's loan. Plaintiff further alleges that Defendants wrongfully caused Notices of Default and Elections to Sell to be recorded on Plaintiff's property.

On October 29, 2013, Defendants removed the action to this Court. CitiMortgage filed a Motion to Dismiss on November 5, 2013. The Court denied the Motion as moot after Plaintiff filed its First Amended Complaint ("FAC") on November 22, 2013. CitiMortgage filed the present Motion to Dismiss on December 3, 2013. Northwest filed a Motion to Join the Motion to Dismiss on December 18, 2013. The Court **GRANTS** Northwest's Motion to Join. For the reasons that follow, the Court **GRANTS in Part** Defendants' Motion.

## II.   **FACTUAL BACKGROUND**

Plaintiff's Complaint makes the following allegations.

On or about September 29, 2003, Plaintiff and Plaintiff's then-wife, Siu Yen Moreno ("S. Moreno"), entered into written loan agreements with CitiMortgage. CitiMortgage agreed to loan Plaintiff and S. Moreno $506,250 ("the Loan") secured by a deed of trust on real property located at 11224, 11226, 11228, 11230 Lower Azusa Road, El Monte, California ("the Property"). CitiMortgage is the lender and beneficiary under the Loan. Verdugo Trustee Service Corporation was named as the trustee under the deed of trust. After September 29, 2003, Verdugo Trustee Service Corporation transferred its interest as trustee to Northwest. On or about August 5, 2008, S. Moreno transferred all of her beneficial interest in the Property to Plaintiff, pursuant to a divorce agreement.

On or about September 22, 2009, Plaintiff hired a company to assist him with a loan modification application. Plaintiff's representative sent all requested information to CitiMortgage. In March of 2010, CitiMortgage informed Plaintiff that he was approved for a Home Affordable Modification Trial Period Plan ("HAMP Plan") and pre-approved for a permanent loan modification. Under the terms of the HAMP Plan, Plaintiff was required to complete three monthly loan payments of $2,499.53 for April, May, and June of 2010. In return, CitiMortgage would permanently modify Plaintiff's monthly mortgage payments. Plaintiff promptly agreed to CitiMortgage's terms. Thereafter, Plaintiff made all of the requisite payments under the HAMP Plan agreement, and remained in compliance with its terms.

On or around June 25, 2010, a CitiMortgage representative informed Plaintiff that he was pre-approved for a loan modification. The representative informed Plaintiff that he would receive a Mortgage Solution Package within five to seven business days, and that all foreclosure activity on the Property would cease. Plaintiff forwent alternative loans and refinancing for the Property in reliance on CitiMortgage's promise of a loan modification.

On or about August 10, 2010, Plaintiff received an email from CitiMortgage informing Plaintiff that his request for mortgage assistance had been approved. On or about August 18, 2010, Plaintiff checked the status of his loan modification on CitiMortgage's website. The status of the loan modification stated "08/09/2010 Your request for lower mortgage payments is approved. Expect your mortgage solution package within 5-7 business days." The website stated that the terms of the loan modification would be a fixed 30 year loan, at an interest rate of 2.00%, with monthly payments of $2,513.26.

On or around September 29, 2010, Plaintiff had not received his promised loan modification and called CitiMortgage. Plaintiff was unable to speak with a CitiMortgage representative with knowledge of his loan modification. Plaintiff continued to make monthly HAMP Plan payments of $2,499.83.

From October 10 of 2010 until January of 2011, Plaintiff continued to call CitiMortgage for updates on his loan modification. CitiMortgage was unable to provide Plaintiff with an update on his file. However, CitiMortgage continued to assure Plaintiff that his loan modification and Mortgage Solution Package would arrive shortly, and instructed him to continue making monthly payments.

In or around February of 2011, CitiMortgage's authorized representative called Plaintiff to ask for updated financial documents. Plaintiff inquired about his loan modification but CitiMortgage's representative was unable to answer Plaintiff's questions.

In July of 2011, Plaintiff called CitiMortgage for an update. CitiMortgage's representative informed Plaintiff that his loan modification and Mortgage Solution Package were still pending.

CitiMortgage's representative informed Plaintiff that the loan modification and Mortgage Solution Package would arrive shortly and that all foreclosure activities would cease.

On or about July 22, 2011, Plaintiff learned via first class letter that CitiMortgage had initiated foreclosure proceedings on the Property. Plaintiff called CitiMortgage, but was unable to speak with a representative with knowledge of his file.

On or about September 12, 2012 [sic], Plaintiff received a call from Gwendolyn Briggs, a CitiMortgage representative. Ms. Briggs informed Plaintiff that CitiMortgage needed additional documents from Plaintiff regarding his property insurance. Plaintiff immediately provided the documents.

On or about September 21, 2011, Ms. Briggs informed Plaintiff that CitiMortgage was unilaterally terminating the promised permanent loan modification. Ms. Briggs subsequently reassured Plaintiff that his loan modification had not been denied, and that it was with the underwriter. In January of 2012, CitiMortgage continually requested updated documents, which Plaintiff provided.

On or around August 27, 2012, Plaintiff filed for Chapter 7 bankruptcy. Plaintiff continued to call CitiMortgage to follow up on his file. CitiMortgage reassured Plaintiff that his loan modification would arrive shortly.

On or about November of 2012, a CitiMortgage representative informed Plaintiff that CitiMortgage was unilaterally terminating his loan modification again. CitiMortgage continued to accept monthly payments from Plaintiff until February of 2013. Plaintiff's last payment was on January 18, 2013, after which CitiMortgage refused to accept additional payments.

On or around May 2013, the Neighborhood Assistance Corporation of America submitted a loan modification application to CitiMortgage on Plaintiff's behalf. CitiMortgage began to review Plaintiff's application.

On or about June 25, 2013, Northwest recorded a Notice of Default and Election to Sell Under Deed of Trust. Plaintiff was not provided notice that Northwest had replaced Verdugo Trustee Service Corporation as the named trustee.

CitiMortgage, Northwest, and their agents did not contact Plaintiff prior to the recorded Notice of Default to notify him, follow up telephonically, advise Plaintiff of his rights to a meeting, or provide a toll free number for a certified housing counseling agency. Nor did they send Plaintiff a first class letter that included a toll free number for HUD.

On or around September 27, 2013, Northwest caused a Notice of Trustee's Sale to be recorded on the Property.

Plaintiff brought suit on October 9, 2013.

## III.  **JUDICIAL STANDARD**

A party may move to dismiss for failure to state a claim upon which relief can be granted under Federal Rule of Civil Procedure 12(b)(6). In deciding a Rule 12(b)(6) motion, the court must assume allegations in the challenged complaint are true, and construe the complaint in the light most favorable to the non-moving party. *Cahill v. Liberty Mut. Ins. Co.*, 80 F.3d 336, 337-38 (9th Cir. 1996). The court shall not consider facts outside the complaint. *Arpin v. Santa Clara Valley Transp. Agency*, 261 F.3d 912, 925 (9th Cir. 2001). Dismissal is appropriate where the complaint lacks a cognizable legal theory

or sufficient facts to support a cognizable legal theory. *Mendiondo v. Centinela Hosp. Med. Ctr.*, 521 F.3d 1097, 1104 (9th Cir. 2008). "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, . . . a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Papasan v. Allain*, 478 U.S. 265, 286 (1986)). Moreover, the court need not accept as true conclusory legal allegations cast in the form of factual allegations. *W. Mining Council v. Watt*, 643 F.2d 618, 624 (9th Cir. 1981).

## IV.   DISCUSSION

Defendants challenge the sufficiency of Plaintiff's allegations with regard to the following causes of action: (1) violation of California Homeowner's Bill of Rights; (2) fraud; (3) unfair business practices; (4) negligent misrepresentation; (5) and promissory estoppel. The Court considers Defendants' arguments below.

### A.   Plaintiff Adequately Alleges At Least One Violation Of The California Homeowner's Bill Of Rights

Plaintiff's First Cause of Action purports to allege a number of violations of the Homeowner's Bill of Rights. First, Plaintiff alleges that "Defendant has violated the Homeowner Bill of Rights by recording the [Notice of Default] without abiding by the notice and due diligence requirements." Second, Plaintiff alleges that Defendants "failed to provide a single point of contact that was able to assist Plaintiff with the loan modification process." Third, Plaintiff alleges that CitiMortgage "violated the Homeowner Bill of Rights by proceeding with foreclosure process ... while reviewing Plaintiff for a loan modification and other foreclosure alternatives.' Fourth, Plaintiff alleges that he "was not provided thirty days from the date of a written denial to appeal the denial and to provide evidence that the mortgage servicer's determination was in error."

Defendant contends that Plaintiff has failed to state a claim under the California Homeowner's Bill of Rights because California Civil Code § 2923.6 did not become effective until January 1, 2013. In Defendant's telling, "[t]he only factual allegations in Plaintiff's FAC which are possibly subject to the California Homeowner's Bill of Rights are set forth in Paragraph 42 relating to the second loan modification application submitted in May of 2013." (Pl.'s Mtn to Dismiss at 4.) The Court agrees that Plaintiff has failed to allege a violation of the Homeowner's Bill of Rights in connection with the denial of his loan modification applications. The Court finds, however, that Plaintiff has adequately alleged that Defendants engaged in other conduct in violation of the Homeowner's Bill of Rights.

#### 1.   *Plaintiff Has Adequately Alleged A Violation Of Civil Code Section 2923.5.*

Defendant's Motion to Dismiss does not directly address the first violation Plaintiff alleges. The Court finds that Plaintiff has adequately alleged that Defendants violated Civil Code section 2923.5.

California Civil Code section 2923.5 provides that

(a)(1) A mortgage servicer, mortgagee, trustee, beneficiary, or authorized agent may not record a notice of default pursuant to Section 2924 until both of the following:

(A) Either 30 days after initial contact is made as required by paragraph (2) or 30 days after satisfying the due diligence requirements as described in subdivision (e).

Paragraph (2) of section 2923.5 provides

(2) A mortgage servicer shall contact the borrower in person or by telephone in order to assess the borrower's financial situation and explore options for the borrower to avoid foreclosure. During the initial contact, the mortgage servicer shall advise the borrower that he or she has the right to request a subsequent meeting and, if requested, the mortgage servicer shall schedule the meeting to occur within 14 days. The assessment of the borrower's financial situation and discussion of options may occur during the first contact, or at the subsequent meeting scheduled for that purpose. In either case, the borrower shall be provided the toll-free telephone number made available by the United States Department of Housing and Urban Development (HUD) to find a HUD-certified housing counseling agency. Any meeting may occur telephonically.

Plaintiff alleges that Defendants recorded or caused to be recorded a Notice of Default on June 25, 2013. Plaintiff further alleges that CitiMortgage, Northwest, and their agents did not contact Plaintiff prior to the recorded Notice of Default to notify him, follow up telephonically, advise Plaintiff of his rights to a meeting, or provide a toll free number for a certified housing counseling agency. Plaintiff alleges that Defendants did not send him a first-class letter containing the toll-free telephone number for HUD. The Court finds that Plaintiff has adequately alleged a violation of section 2923.5.

### 2.   *Plaintiff Has Not Adequately Alleged A Violation Of Civil Code Section 2923.7*

Plaintiff alleges that Defendants violated California Civil Code section 2923.7 by failing to provide a single point of contact for Plaintiff. Defendant contends that the statute was not in effect at the time of the conduct underlying Plaintiff's allegations. The Court agrees.

Section 2923.7(a) provides that "[u]pon request from a borrower who requests a foreclosure prevention alternative, the mortgage servicer shall promptly establish a single point of contact and provide to the borrower one or more direct means of communication with the single point of contact." Section 2923.7 became effective on January 1, 2013.

Plaintiff has not alleged that he spoke with more than one CitiMortgage representative after January 1, 2013. Plaintiff has not alleged that he contacted Northwest after January 1, 2013. As such, Plaintiff has not adequately alleged that Defendants violated Civil Code Section 2923.7.

### 3.   *Plaintiff Has Not Adequately Alleged A Violation Of Civil Code Section 2923.6*

Plaintiff alleges that CitiMortgage "violated the Homeowner Bill of Rights by proceeding with the foreclosure process ... while reviewing Plaintiff for a loan modification and other foreclosure alternatives" and by failing to provide "thirty days from the date of a written denial to appeal the denial." The Court disagrees.

California Civil Code section 2923.6 provides the basis for Plaintiff's claims. It provides in pertinent part:

(c) If a borrower submits a complete application for a first lien loan modification offered by, or through, the borrower's mortgage servicer, a mortgage servicer, mortgagee, trustee, beneficiary, or authorized agent shall not record a notice of default or notice of sale, or conduct a trustee's sale, while the complete first lien loan modification application is pending.

[...]

(d) If the borrower's application for a first lien loan modification is denied, the borrower shall have at least 30 days from the date of the written denial to appeal the denial and to provide evidence that the mortgage servicer's determination was in error.

The statute did not become effective until January 1, 2013. Plaintiff alleges that he submitted only one loan modification application after January 1, 2013, the application of May 2, 2013. According to Plaintiff's allegations, this application was submitted after his earlier applications were denied prior to January 1, 2013. Section 2923.6(g) specifically limits mortgage servicers' obligation to evaluate a borrower's application if he has had an application denied before 2013. The statute provides

> (g) In order to minimize the risk of borrowers submitting multiple applications for first lien loan modifications for the purpose of delay, the mortgage servicer shall not be obligated to evaluate applications from borrowers who have already been evaluated or afforded a fair opportunity to be evaluated for a first lien loan modification prior to January 1, 2013, or who have been evaluated or afforded a fair opportunity to be evaluated consistent with the requirements of this section, unless there has been a material change in the borrower's financial circumstances since the date of the borrower's previous application and that change is documented by the borrower and submitted to the mortgage servicer.

Plaintiff has not alleged a material change in his financial circumstances between the date of the denial of his pre-2013 applications and his application in 2013. As such, it appears that Defendants did not have an obligation under section 2923.6 to consider Plaintiff's May 2, 2013 application. The Court accordingly finds that Plaintiff has not adequately alleged a violation of Civil Code section 2923.6.

### B.    Plaintiff Has Not Adequately Alleged Fraud

Defendant contends that Plaintiff has failed to adequately allege fraud. The Court agrees.

"[A] cause of action for fraud or misrepresentation requires the plaintiff to prove (a) a knowingly false misrepresentation by the defendant, (b) made with the intent to deceive or to induce reliance by the plaintiff, (c) justifiable reliance by the plaintiff, and (d) resulting damages." *Wilhelm v. Pray, Price, Williams & Russell*, 186 Cal. App. 3d 1324, 1331 (1986). Fraud must be pled with particularity. Fed. R. Civ. P. 9(b).

Defendant argues that Plaintiff has failed to adequately allege justifiable reliance and damages. The Court finds that Plaintiff has not adequately alleged damages.

#### 1.    *Plaintiff Has Not Adequately Alleged Damages*

Plaintiff has not specifically alleged the damages he suffered as a result of Defendant's purported misrepresentations. In his Opposition, Plaintiff argues that he has alleged that he suffered three types of damages: (1) attorney's fees; (2) damage to his credit; and (3) the imminent loss of his property.

As to Plaintiff's attorney's fees, the law is clear that attorney's fees cannot be claimed as damages on these facts. "It is the general rule that, in the absence of some statutory or contractual provision, attorney's fees must be paid by the party employing the attorney and are not recoverable as damages against the party being sued." *See Roberts v. Ball, Hunt, Hart, Brown & Baerwitz*, 57 Cal. App. 3d 104, 112 (1976) (citations omitted). An exception exists in cases where a Plaintiff is forced, through the tort of another, to bring suit against a third party. *See id.* (quoting *Prentice v. North Amer. Title Guar. Corp.* 59 Cal.2d 618, 620 (1963)) ("'(a) person who through the tort of another had been required to act in the protection of his interests by bringing or defending an action against a third person is entitled to recover compensation for the reasonably necessary loss of time, attorney's fees, and other expenditures thereby suffered or incurred'"). However, Plaintiff has not alleged how CitiMortgage's purported fraud forced him to bring suit against a third party.

As to Plaintiff's claim that CitiMortgage's fraud damaged his credit, the Court can find no allegation to that effect in Plaintiff's FAC. Moreover, even if Plaintiff had alleged that CitiBank damaged his credit, that allegation would likely be facially implausible in light of Plaintiff's other allegations. Plaintiff alleges that he voluntarily filed for Chapter 7 bankruptcy in August of 2012, before he stopped making payments to CitiMortgage. Plaintiff has not alleged that CitiMortgage's fraud caused him to file for bankruptcy. For this reason, it appears likely that any damage to Plaintiff's credit was the result of his bankruptcy and not CitiBank's fraud.

As to the purported imminent loss of Plaintiff's property, the Court finds that the possible future loss of Plaintiff's property is too speculative to support a cause of action for fraud. Plaintiff acknowledges that he has not determined whether foreclosure proceedings have been postponed or are ongoing. "While it has been frequently said that a person who commits a wrongful act or wrongfully omits to perform a particular act required of him is liable for all the detriment directly flowing from the wrongful act or omission, it is black-letter  law that damages may not be based upon sheer speculation or surmise, and the mere possibility or even probability that damage will result from wrongful conduct does not render it actionable." *Ventura Cnty. Humane Soc'y v. Holloway*, 40 Cal. App. 3d 897, 907 (1974) (citations omitted). *See also Roberts*, 57 Cal. App. 3d at 111 (in cause of action for deceit, plaintiff must plead damages with sufficient specificity and may not allege damages in "speculative terms.")

Because Plaintiff has not alleged any compensable damages in connection with Defendant's purported misrepresentations, Plaintiff has failed to adequately allege a claim for fraud.

### C.      Plaintiff's Allegations Do Not Establish That He Has Standing To Bring Claims For Unfair Business Practices

Defendant contends that Plaintiff lacks statutory standing to bring claims under the California Unfair Competition Law. The Court agrees.

"Business and Professions Code section 17204 restricts private standing to bring a UCL action to 'a person who has suffered injury in fact and has lost money or property as a result of unfair competition.'" *Jenkins v. JP Morgan Chase Bank, N.A.*, 216 Cal. App. 4th 497, 521 (2013) (emphasis in original omitted) (quoting Cal. Bus. & Prof.Code, § 17204, as amended by Prop. 64, as approved by voters, Gen. Elec. (Nov. 2, 2004) § 3). "To satisfy the narrower standing requirements imposed by Proposition 64, a party must now (1) establish a loss or deprivation of money or property sufficient to qualify as injury in fact, i.e., economic injury, and (2) show that the economic injury was the result of, i.e., caused by, the unfair business practice or false advertising that is the gravamen of the claim." *Id.* (quoting *Kwikset Corp. v. Superior Court*, 51 Cal. 4th 310, 322 (2011)). "A plaintiff must support each of the standing elements under Business and Professions Code section 17204 'in the same way as any other matter on which the plaintiff bears the burden of proof, i.e., with the manner and degree of evidence required at the successive stages of the litigation.'" *Id*. (quoting *Kwikset Corp.*, 51 Cal. 4th at 327).

As the Court noted in addressing Plaintiff's fraud claim, Plaintiff has not adequately alleged that he lost money or property as a result of Defendant's conduct. Even if Plaintiff had clearly alleged that a foreclosure sale was scheduled, this would not constitute the kind of economic injury required for standing under section 17204. *See Jurewitz v. Bank of America, N.A.*, 938 F. Supp. 2d 994, 1000 (complaint failed to adequately allege standing where it merely stated that a foreclosure sale was scheduled, but did not allege that plaintiff actually lost his property).

Absent a specific allegation that Plaintiff lost money or property, Plaintiff has not adequately alleged standing pursuant to section 17204.

**D.**   **Plaintiff Has Failed To State A Claim For Negligent Misrepresentation**

Defendant argues that Plaintiff has not stated a claim for negligent misrepresentation because CitiMortgage did not owe Plaintiff a duty of care as a matter of law. The Court agrees.

"Liability for negligent conduct may only be imposed where there is a duty of care owed by the defendant to the plaintiff." *Ladd v. County of San Mateo*, 12 Cal. 4th 913, 918 (1996) (citation omitted). "As a general rule, a financial institution owes no duty of care to a borrower when the institution's involvement in the loan transaction does not exceed the scope of its conventional role as a mere lender of money." *Nymark v. Heart Fed. Sav. & Loan Assn.*, 231 Cal. App. 3d 1089, 1096 (1991) (citations omitted). The general rule extends to the handling of loan modification negotiations. "[T]he handling of loan modification negotiations or servicing is a typical lending activity that precludes imposition of a duty of due care." *Aspiras v. Wells Fargo Bank, N.A.*, 219 Cal. App. 4th 948, 965 (2013).

The Court finds that, under California law, the borrower-lender relationship between Plaintiff and Defendant precludes a cause of action for negligent misrepresentation on the facts alleged by Plaintiff.

**E.**   **Plaintiff's Claim for Promissory Estoppel Is Barred By The Statute Of Limitations**

Defendant contends that the Plaintiff's claim for promissory estoppel is barred by the statute of limitations. The Court agrees.

Plaintiff and Defendant agree that the statute of limitations for breach of an oral agreement is two years. *See* Cal. Code Civ. P. § 339. Plaintiff and Defendant disagree on the date on which the statute began to run.

In both tort and contract cases, the statute of limitations begins to run upon occurrence of the last fact essential to the cause of action. *See, e.g., Saliter v. Pierce Bros. Mortuaries*, 81 Cal. App. 3d 292 (1978). To establish promissory estoppel, Plaintiff must allege: "(1) a clear promise; (2) reasonable reliance; (3) substantial detriment; and (4) damages measured by the extent of the obligation assumed and not performed." *Poway Royal Mobilehome Owners Ass'n. v. City of Poway*, 149 Cal. App. 4th 1460, 1470 (2007).

Plaintiff contends that the statute of limitations began to run on September 21, 2011, when Plaintiff alleges that Defendant unilaterally terminated the promised permanent loan modification agreement. The Court agrees. Plaintiff's cause of action for promissory estoppel would have accrued once Defendant clearly communicated to Plaintiff that it did not intend to perform. *See Parker v. Walker*, 5 Cal. App. 4th 1173, 1189 (in suit to enforce oral agreement, statute of limitations begins to run when contract is repudiated). Plaintiff alleges that this occurred on September 21, 2011. Plaintiff did not file suit until October 9, 2013, more than two years after the cause of action for promissory estoppel accrued. The Court therefore finds that the statute of limitations bars Plaintiff's promissory estoppel claim.

## V.      CONCLUSION

For the above reasons, the Court **GRANTS** Defendants' Motion in part. The Court dismisses Plaintiff's First Cause of Action, but only as to the alleged violations of California Civil Code sections 2923.6 and 2923.7. The Court also dismisses Plaintiff's Second Cause of Action (Unfair Competition Law), Fourth Cause of Action (fraud), Fifth Cause of Action (negligent misrepresentation), and Sixth Cause of Action (promissory estoppel).

**IT IS SO ORDERED.**

:

**Initials of Preparer**